STATE of Tennessee, ex rel. Tommye
Maddox WORKING

v.

Robin G. COSTA, et al.

Court of Appeals of Tennessee,
Western Section, at Nashville.

July 11, 2006 Session.

Aug. 8, 2006.

Permission to Appeal Denied by
Supreme Court Dec. 18, 2006.

Aubrey B. Harwell, Jr., James G. Thomas, Gerald D. Neenan of Nashville for Appellant, Maddox Foundation; Daniel C. Paulus and Michael P. Dolan of Nashville for Appellant, Robin Costa.

Joseph A. Woodruff, Richard A. Johnson and Paul A. Gontarek of Nashville; Victor S. (Torry) Johnson, III, District Attorney General for Appellee, State of Tennessee, ex rel. Tommye Maddox Working.

**OPINION**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

This case involves the determination under pre-existing law of the proper method for transferring the situs of a trust from this state to another state or location. The trial court held that the transfer must be made with court approval pursuant to the provisions of T.C.A. § 35–1–122 which was repealed in 2004. The trustees of the trust, without court approval, transferred

the situs of the trust to the State of Mississippi in 1999. The trial court also held that subsequent actions of the trustee in transferring the assets of the trust to a corporation, as authorized by the trust instrument, was invalid. The trustee has appealed. We affirm the order of the trial court granting partial summary judgment to the extent that the statute requires court approval before transferring the situs of the trust. We reverse the order of the trial court granting partial summary judgment to the extent that it voids the trustee's actions following the attempt to transfer the situs of the trust. Affirmed in part, reversed in part and remanded.

The Maddox Foundation Trust ("Maddox Trust"), a Tennessee charitable foundation, was created as an *inter vivos* trust by Dan W. Maddox pursuant to a trust agreement dated October 19, 1968. The Maddox Foundation Trust Agreement ("Trust Agreement") states that the Trust was established for "charitable, religious, scientific, literary, and/or educational purposes, either directly, or by contributions to organizations duly authorized to carry on charitable, religious, scientific, literary, or educational activities; provided, however, that no part of the assets of this Trust, either principal or interest, shall inure to the benefit of any private individual." Under the original Trust Agreement, Dan Maddox was the Chairman of the Trustees, and J.V. Beall and J.E. Moore served as trustees. The original Trust Agreement provides that the trustees had the right to increase the number of trustees to any number not exceeding seven (7); however, the agreement states that the number of trustees may never be less than three (3). The Trust Agreement further states that the Donor, Dan Maddox, authorizes the trustees to form and organize a corporation to administer and control the affairs and properties of the Maddox Foundation Trust, if the trustees desire to do so. The Trust Agreement authorizes the trustees to transfer to such corporation all the property and assets that the Maddox Trust has, or to which it would be entitled. The Trust Agreement provides that the agreement itself could be amended by unanimous agreement of the trustees.

The Trust Agreement, by written agreement of the trustees, was amended ten times between 1968 and 1996 (some being designated as Amendments to the Trust Agreement and others as Actions on Written Consent of Trustees). Margaret Maddox, wife of Dan Maddox, was named a trustee of the Maddox Trust pursuant to the second amendment to the Trust on July 6, 1977. Relevant amendments include the September 5, 1986 amendment which authorizes the trustees, if they so desire, to form and organize a corporation "under the laws of Tennessee, and/or such other State as deemed appropriate by the Trustees" to administer and control the affairs and properties of the Maddox Foundation Trust. Tommye Maddox Working, step granddaughter of Dan Maddox (together with State, "Plaintiffs" or "Appellees"), became a trustee of the Maddox Trust pursuant to an Action on Written Consent of Trustees dated December 30, 1994. Robin G. Costa ("Defendant" or "Appellant"), an employee of Dan Maddox, became a trustee of the Maddox Trust pursuant to an Action on Written Consent of Trustees dated May 9, 1996. The May 9, 1996 amendment also provided that, upon the death of both Dan and Margaret Maddox, "the Board of Trustees will be comprised of Robin G. Costa and Tommye B. Maddox; they will have the right to jointly elect one or more persons to serve with them on the Board of Trustees." In January, 1998, Dan and Margaret Maddox died simultaneously in a boating accident in Louisiana.

On June 14, 1999, Robin Costa and Tommye Maddox Working, the two surviving trustees of the Maddox Trust, signed an Action on Written Consent of the Trustees of the Maddox Foundation ("June 1999 Amendment"), which moved the situs of the Maddox Trust for administration and for all other purposes from Tennessee to Mississippi. The June 1999 Amendment states that "[a]ll powers and authority residing in the Trustee for the management and administration of the Trust shall be exercised by Robin G. Costa, who shall serve as the Managing Trustee of the Maddox Foundation Trust." Additionally, the June 1999 Amendment states that "Tommye Maddox Working delegates all powers and authority she has as a Trustee" to Robin G. Costa. Ms. Costa and Ms. Working, as well as the offices of the Maddox Trust, moved to Hernando, Mississippi in 1999.

On September 13, 1999, the Maddox Foundation Corporation ("Maddox Corporation") was incorporated as a Mississippi nonprofit corporation with Ms. Costa and Ms. Working as the only incorporators. Under the bylaws of the Maddox Corporation, Ms. Costa is "exclusively authorized to exercise all of the powers which would otherwise be exercisable by the Board of Directors, whether or not such powers are set forth" in the bylaws with the exceptions of (1) the power to dissolve, liquidate, or otherwise terminate the Maddox Corporation; (2) the power to transfer all or substantially all of the Maddox Corporation's assets; (3) the power to approve the merger or other type of reorganization of the Maddox Corporation in conjunction with some other entity; and (4) the power to alter or amend the Articles of Incorporation or the bylaws, subject to the consent of Robin G. Costa.

On September 1, 2000, Ms. Costa and Ms. Working signed an Action on Written Consent of the Trustees of Maddox Foundation Trust ("September 2000 Amendment"), which states that "Tommye Maddox Working, ... upon the execution of this document, will thereby terminate her services as Trustee of Maddox Foundation." The September 2000 Amendment states that Ms. Working was resigning due to personal and family considerations and not due to any internal conflict with regard to the management of the Maddox Trust.

On July 27, 2001, Ms. Costa, as Managing Trustee of the Maddox Foundation Trust and as a director of the Maddox Corporation, and Ms. Working, as a director of the Maddox Corporation, executed an Agreement as to Reorganization of the Maddox Foundation Trust ("Reorganization Agreement"). The Reorganization Agreement states that the Maddox Trust had sought, and received, approval from the Internal Revenue Service ("IRS") for the plan to transfer all the assets of the Maddox Trust to the Maddox Corporation, and such plan qualified as a tax-free reorganization permitted for tax-exempt entities under the IRS code. Therefore, the Reorganization Agreement authorizes, pursuant to Section 12 of the Maddox Trust Agreement, the transfer of the Maddox Trust's "legal and equitable title in any and every asset it presently has or shall be entitled to in the future" to the Maddox Corporation. On August 1, 2001, the Maddox Corporation accepted receipt of all of the assets transferred to it by the Trust.

On August 31, 2004, the Davison County District Attorney General, Victor Johnson, filed this lawsuit on relation of the Plaintiff, Ms. Working, as Trustee for and on behalf of the Maddox Foundation Trust, a Tennessee charitable trust, and as Director of the Maddox Foundation, a Mississippi non-profit corporation, and on behalf of the citizens of Davidson County and

the State of Tennessee. The suit was filed pursuant to the *quo warranto* statutes of the State of Tennessee, T.C.A. § 29–35–101[1]; the Tennessee Declaratory Judgment Act, T.C.A. § 29–14–103[2]; and the Tennessee common law against Ms. Costa, individually and as Trustee for the Maddox Foundation Trust, and as Director of the Maddox Foundation Corporation ("Defendant" or "Appellant"). Ms. Working is the "relator" in this *quo warranto* action. Appellees assert jurisdiction over the claims pursuant to T.C.A. § 29–35–111[3], T.C.A. § 35–1–122[4], T.C.A. § 29–35–101 *et seq.*, and T.C.A. § 35–1–101[5] *et seq.* The com-

1. T.C.A. § 29–35–101. Usurpation or Forfeiture of Office or Franchise–Corporate Misdeeds.

     An action lies in the name of the state against the person or corporation offending, in the following cases:
     (1) Whenever any person unlawfully holds or exercises any public office or franchise within this state, or any office in any corporation created by the laws of this state;
     (2) Whenever any public officer has done, or suffered to be done, any act which works a forfeiture of that officer's office;
     (3) When any person acts as a corporation within this state, without being authorized by law;
     (4) Or if, being incorporated, they:
     (A) Do or omit acts which amount to a surrender or forfeiture of their rights and privileges as a corporation;
     (B) Exercise powers not conferred by law; or
     (C) Fail to exercise powers conferred by law and essential to the corporate existence.

2. T.C.A. § 29–14–103. Declaratory Judgments.

     Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

3. T.C.A. § 29–35–111. Jurisdiction; venue.

     Usurpation or Forfeiture of Office or Franchise–Corporate Misdeeds.
     The suit is brought by bill in equity, filed in either the circuit or chancery court of the county in which the office is usurped or held, or the corporation or supposed corpo-

ration holds its meetings or has its principal place of business.

4. T.C.A. § 35–1–122. Venue; county of situs of the trust.

     (a) When a Tennessee court has jurisdiction of any trust, testamentary or inter vivos, except as otherwise provided by law, the venue for all purposes shall be in the county which is the situs of the trust. The situs of the trust shall remain in the county of the court which first assumed jurisdiction of the trust, unless such court orders a change of situs as provided in subsection (b).
     (b) Notwithstanding any other provisions of this chapter, a court having jurisdiction of a testamentary or inter vivos trust, on application of a trustee or of any party in interest, after proper notice to all parties interest, and after an accounting and provision to ensure the proper payment of all taxes owed to the state and any other political subdivision thereof, may direct that the situs of the trust shall be changed to any other place in or out of the state if the court finds the change necessary or desirable for the proper administration of the trust. Upon such change of situs becoming effective by the assumption of jurisdiction by another court, the jurisdiction of the court as to the trust shall cease, and the situs of the trust for all purposes shall be as directed by the court. § 35–1–122. Repealed by 2004 Pub. Acts, c. 537, § 97, eff. July 1, 2004.

5. T.C.A. § 35–1–101. Jurisdiction; co-trustee appointments.

     (a) The chancery and other courts having probate jurisdiction have concurrent jurisdiction to appoint trustees and co-trustees, to accept the resignation of trustees and co-trustees and to remove trustees and co-trustees who are acting under wills, personal and corporate trust agreements and indentures and orders of court.
     (b) The court shall make an affirmative finding that the appointment of a co-trustee

plaint contains eight claims for relief seeking: 1) a finding that Ms. Costa, individually and as a Trustee for the Maddox Foundation Trust and as Director of the Maddox Foundation Corporation, is guilty of willful, wanton or gross negligence; 2) a declaratory judgment that the transfer of the situs of the Maddox Foundation Trust, and transfer of the assets of the Maddox Foundation Trust to the Maddox Foundation Corporation was ineffective and invalid, and that the Action on Written Consent of the Trustees that stripped Ms. Working of any authority over the Trust was null and void; 3) injunctive relief restraining Ms. Costa from transferring, distributing and/or engaging in any transactions concerning the assets of the Maddox Foundation without approval of a court-appointed special master, and prohibiting Ms. Costa from using any assets held by the Maddox Corporation to defend the present lawsuit; 4) a finding that Ms. Costa, as a Trustee for the Maddox Foundation Trust and as Director of the Maddox Foundation Corporation, has breached her fiduciary duty pursuant to T.C.A. 35-9-101, as well as her duty of loyalty, owed to the beneficiaries of the Maddox Foundation Trust through Ms. Costa's imprudent investment in American Retirement Corporation, inappropriate use of Maddox Foundation Corporation funds to purchase and operate the Memphis RiverKings, and the Memphis Xploers, improper use of Maddox Foundation Corporation Funds to provide and pay for Ms. Costa's excessive salary and benefits package, personal travel expenses and other personal expenses; 5) appointment of a special master by the court and conduct an independent accounting and audit of the financial statements and records of the Maddox Foundation Corporation and its subsidiaries; 6) a finding that Ms. Cos-

ta, individually and as a Trustee for the Maddox Foundation Trust and as Director of the Maddox Foundation Corporation, is guilty of conversion of Maddox Foundation Trust and Maddox Foundation Corporation funds under the common law of Tennessee, and the Plaintiff is entitled to an equitable recoupment or return of the property unlawfully taken; 7) instruction from the Court to purport with the intention of the settlor, Dan M. Maddox, as to the minimum and maximum number of Trustees that are required by the Trust; and 8) removal of Ms. Costa as trustee of the Maddox Foundation Trust, and for removal of the Maddox Foundation Corporation as trustee of the Maddox Foundation Trust. Plaintiffs' core contention is that the Maddox Trust failed to change its situs to the State of Mississippi in 1999 because it did not obtain the prior approval of a Tennessee court pursuant to T.C.A. § 35-1-122 (repealed effective July 1, 2004). *See supra* note 4. The Plaintiffs further contend that the failure to obtain the approval of a Tennessee court had the legal effect of leaving the trust intact in Davidson County, Tennessee, and that the subsequent transfer of the Maddox Trust's assets to the Maddox Corporation in 2001 was null and void.

Also, on August 31, 2004, the Plaintiffs filed a motion for temporary injunction. The motion sought the appointment of a special master to monitor all Maddox Foundation Corporation transactions and conduct an independent accounting and audit of the records and financial statements of the Maddox Foundation Corporation. The motion for temporary injunction also sought that Ms. Costa be enjoined from removing Ms. Working as a member of the

will not frustrate or impede the intention of the grantor of the trust in establishing the trust or significantly increase the cost of administering the trust. Repealed by 2004 Pub.Acts, c. 537, § 97, eff. July 1, 2004.

Maddox Foundation Corporation Board of Directors, or appointing anyone else to the board. Additionally, the motion sought to prohibit Ms. Costa from transferring, distributing and/or engaging in any transactions concerning the Maddox Foundation Trust or Corporation without the approval of a court-appointed special master. On September 3, 2004, Plaintiffs filed a motion for instructions seeking guidance from the trial court concerning the manner in which Maddox Trust assets held in a fiduciary capacity by the Maddox Corporation could or should be used for the payment of attorneys' fees and other expenses incurred in the litigation.

On September 13, 2004, Ms. Costa filed a response to the Plaintiffs's motion for instruction and argued that the Davidson County Probate Court did not have jurisdiction over the Maddox Corporation because T.C.A. § 35–1–122 had been repealed by passage of the Tennessee Uniform Trust Code and therefore could not be used to establish a basis for jurisdiction and venue. Further, Ms. Costa argued that T.C.A. § 35–1–122 did not require judicial approval by a Tennessee court of the change of situs of the Maddox Trust from Tennessee to Mississippi because no Tennessee court had assumed jurisdiction over the Maddox Trust prior to the transfer of situs.

On September 28, 2004, after considering the argument of the parties, entered an Order regarding the Plaintiffs' motion for instruction and found that:

It is undisputed that through activities engaged in by Plaintiff Tommye Maddox Working and Defendant Robin G. Costa, there are now no assets in the Trusts, or in the Liquidated Foundation, all of said assets having apparently been poured over into the Maddox Foundation without notice to, or consent from the statutory representative of the beneficiaries

of the Trusts and without prior Court approval.

The Court notes that the by-laws of the Maddox Foundation [i.e. Maddox Corporation] contain a forum selection clause reflecting in part that "the internal law of Mississippi shall govern the creation, governance, operation, validity, dissolution and all other matters pertaining to the corporation. Jurisdiction to resolve disputes involving such matters shall reside exclusively in the appropriate Courts of Mississippi."

However, at the time of the creation of The Maddox Foundation [i.e. Maddox Trust], there existed Tennessee Code Annotated § 35–1–122(b), which states:

(b) Notwithstanding any other provisions of this chapter, *a court having jurisdiction of a testamentary or inter vivos trust,* on application of a trustee or of any party in interest, *after proper notice to all parties interest[ed],* and after an accounting and provision to ensure the proper payment of all taxes owed to the state and any other political subdivision thereof, *may direct that the situs of the trust shall be changed to any other place in or out of the state if the court finds the change necessary or desirable for the proper administration of the trust.* Upon such change of situs becoming effective by the assumption of jurisdiction by another court, the jurisdiction of the court as to the trust shall cease, and the situs of the trust for all purposes shall be as directed by the court. (Emphasis added).

Effective July 1, 2004, Tennessee repealed the foregoing Statute and replaced it with the Tennessee Uniform Trust Code (2004 Tennessee Pub. Ch. 537, § 97) which states in part:

[35–15–105. Default and mandatory rules.] Section 6(b). The terms of a trust prevail over any provision of this Tennessee Uniform Trust Code except: ... (11) The powers of the Court to take such action and exercise such jurisdiction as may be necessary in the interest of justice ...

[35–15–1103. Application to existing relationships.] Section 94(a). Except as otherwise provided in this Tennessee Uniform Trust Code, on the effective date of this Tennessee Uniform Trust Code: (1) *This Tennessee Uniform Trust Code applies to all Trusts created before, on, or after its effective date:* (2) this Tennessee Judicial Trust Code applies to all judicial proceedings concerning Trusts commenced on or after its effective date. (3) *This Tennessee Uniform Trust Code applies to judicial proceedings concerning Trusts commenced before its effective date unless the Court finds that application of a particular provision of this Tennessee Uniform Trust Code would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties, in which case the particular provisions of this Tennessee Uniform Trust Code does not apply and the superceded law applies;* (4) Any rule of construction or presumption provided in this Tennessee Uniform Trust Code applies to trust instruments executed before the effective date of the Tennessee Uniform Trust Code unless there is a clear indication of a contrary intent in the terms of the trust; and (5) *An act done before the effective date of the Tennessee Uniform Trust Code is not affected by this Tennessee Uniform Trust Code.*

In the instant case, the Trustees failed to request or obtain Court approval as a prerequisite to the transfer of the situs of the Maddox Foundation Trust from Tennessee to Mississippi.

The Court finds that despite the repeal of T.C.A. § 35–1–122(b), and despite the general applicability of the new Tennessee Uniform Trust Code to the pending litigation, the specific application of the Tennessee Uniform Trust Code to a determination regarding removal of the situs of the Trust from Tennessee without prior Court approval would substantially interfere with the effective conduct of these judicial proceedings or prejudice the rights of the parties and, therefore, the superceded Statutory Law shall apply. This Court retains jurisdiction over the Maddox Foundation as well as a successor Mississippi Corporation ...

On October 1, 2004, Ms. Costa filed a motion to dismiss arguing that T.C.A. § 35–1–122 was a "venue transfer provision applicable only to judicial proceedings concerning trusts; it did not otherwise require judicial approval of a change in a trust's situs." Further, Ms. Costa argued that Davidson County District Attorney General, Victor Johnson, did not have standing and/or jurisdiction to pursue the *quo warranto* action against the Defendants. On October 15, Plaintiffs filed a response to Defendant's motion to dismiss, and both parties made oral arguments before the trial court. On November 9, 2004, the trial court denied Defendant's motion to dismiss and specifically found that the trial court "has and retains jurisdiction over the Maddox Foundation (Trust) as well as any successor Mississippi Corporation in that the Trustees of the Maddox Foundation Trust failed to request or obtain approval from this Court as a prerequisite to transferring the situs of the Maddox Foundation Trust from Tennessee to Mississippi."

On November 8, 2004, Plaintiffs filed a supplemental motion for temporary injunction, again seeking appointment of a special master to conduct an independent accounting and audit of the Mississippi Corporation and injunctive relief against Ms. Costa, individually. Before the motion for temporary injunction could be heard in Davidson County, Tennessee, a civil action was filed in Chancery Court in DeSoto County, Mississippi by the State of Mississippi against the Mississippi Corporation, Ms. Costa and Ms. Working seeking declaratory and injunctive relief to restrain Plaintiffs in the Tennessee litigation from moving any assets of the Mississippi Corporation from Mississippi to Tennessee. On November 18, 2004, the Chancery Court of DeSoto County, Mississippi ("Mississippi Court") entered an Order agreed to by the State of Mississippi, Ms. Costa and the Mississippi Corporation to enjoin any Special Master appointed by Tennessee from intervening, interfering or otherwise participating in the management of the Mississippi Corporation. Further, the Order of the Chancery Court of DeSoto County, Mississippi assumed jurisdiction over all controversies cognizable as cases of law or in equity involving the Maddox Foundation Corporation.

However, on November 22, 2004, the Davidson County Probate Court ("Tennessee Probate Court") proceeded with the hearing on Plaintiffs' motion for temporary injunction and entered an order on November 29, 2004, appointing an accounting firm to conduct an accounting of the Maddox Corporation and its related subsidiaries for a specified five-year period. Further, the Davidson County trial court granted, in part, the Plaintiffs' request for injunctive relief, and reserved other matters, including the appointment of a special master, for a future hearing pending the completion of the court-ordered accounting.

On August 1, 2005, Appellees filed a motion for partial summary judgment requesting that the Davidson County Probate Court declare that the document signed by the Trustees of the Maddox Foundation, which transferred the situs of the Maddox Foundation Trust to Mississippi, was invalid and ineffective, and that the document signed by Ms. Costa, which transferred all of the assets from the Maddox Foundation Trust to the Maddox Foundation Corporation, was also invalid and ineffective. A hearing was set for Sept. 9, 2005, but postponed to September 16, 2005 at the request of Ms. Costa's counsel.

On August 26, 2005, a motion for summary judgment was filed by the State of Mississippi seeking a judgment that T.C.A. § 35-1-122 did not apply to the Maddox Trust, that the change of the situs of the Maddox Trust was valid, and that Mississippi had exclusive jurisdiction over the Maddox Trust and the Maddox Corporation. The defendants in the Mississippi litigation are Ms. Costa, Ms. Working, and the Maddox Corporation. The Mississippi Court set a hearing for September 7, 2005. Counsel for Ms. Working advised the Mississippi Attorney General's office that Ms. Working would not be available on September 7, and provided alternate dates when she would be available. Ms. Working was advised that the Mississippi Attorney General would not likely approve the alternate dates because of certain deadlines pending in the Tennessee litigation.

Faced with the belief that the Mississippi Attorney General was attempting to impair the Tennessee Probate Court's jurisdiction, on August 29, 2005, Plaintiffs filed an emergency motion to reschedule hearing on Plaintiffs' motion for partial summary judgment. In response to the

Plaintiffs' emergency motion, the Davidson County Probate Court entered an Order requiring the parties to the Tennessee litigation to appear before the Davidson County Probate Court on August 30, 2005, at 1:30 p.m. Also in the Order, the Davidson County Probate Court notified the parties that, should the court determine that the Plaintiffs' emergency motion be granted, then the hearing on the Plaintiffs' motion for partial summary judgment would be heard immediately following the conclusion of the hearing on the Plaintiffs' emergency motion. The Davidson County Probate Court concluded that in the interests of justice the court would suspend the Davidson County Local Rule that required 37 days between the filing of a motion for summary judgment and the hearing on the summary judgment motion in order to ensure that the Davidson County Probate Court's jurisdiction not be impaired by the Mississippi litigation. The Plaintiffs' motion for partial summary judgment was then heard immediately following the conclusion of the hearing on the Appellees' emergency motion. By order entered August 30, 2005, the trial court granted Plaintiffs' partial summary judgment and, pursuant to Rule 57, the Tennessee Probate Court declared that 1) T.C.A. § 35–1–122 required that the trustees of the Tennessee Trust seek approval of a court of competent jurisdiction before attempting to transfer the situs of the Tennessee Trust; 2) that it was undisputed that the trustees did not seek approval from a Tennessee court to change situs; 3) due to the absence of compliance with T.C.A. § 35–1–122, the purported transfer of the situs of the Tennessee Trust to Mississippi was invalid and ineffective, and 4) the transfer of all of the Tennessee Trust assets to the Maddox Corporation in Mississippi was invalid and ineffective. The Tennessee Probate Court then certified the judgment as a final judgment pursuant to Rule 54.02.

On September 9, 2005, Appellants filed a Notice of Appeal to this Court. The issues, as stated in the Appellants' brief:

(1) Whether the trial court erred in holding that former T.C.A. § 35–1–122 (subsequently repealed) required an *inter vivos* trust to obtain the approval of a Tennessee court before changing its situs, even when no Tennessee court had ever "assumed jurisdiction" over the trust and the trial court's construction of the statute leads to absurd results?

(2) Whether the trial court erred in holding that because the *inter vivos* trust had failed to obtain prior judicial approval of it change of situs under former T.C.A. § 35–1–122, its change of situs was totally ineffective and all of its actions from that point forward were void, even to the point of deeming the trust to have continued its existence in Davidson County without interruption form 1999 to the present?

(3) Whether, in view of the trial court's holding that the *inter vivos* trust had continued in existence, the trial court nevertheless lacked subject matter jurisdiction under the Tennessee Uniform Trust Code that became law on July 1, 2004 (specifically, T.C.A. § 35–15–204(a)), because the trust's "principal place of administration" is not in Davidson County?

(4) Whether the trial court's violation of the Davidson County Local Rules of Practice by hearing Plaintiff's Motion for Partial Summary Judgment on less than twenty-four hours notice and almost two weeks before the deadline for Defendants' written response amounted to an abuse of discretion?

It is well settled that a motion for summary judgment should be granted when

the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997). On motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the nonmoving party that there is no genuine issue of material fact, the nonmoving party must them demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id.* at 210–11 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain,* 936 S.W.2d at 622. Therefore, our review of the trial court's denial of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk,* 954 S.W.2d 722, 723 (Tenn.1997).

(1) Whether the trial court erred in holding that former T.C.A. § 35–1–122 (subsequently repealed) required an *inter vivos* trust to obtain the approval of a Tennessee court before changing its situs, even when no Tennessee court had ever "assumed jurisdiction" over the trust and the trial court's construction of the statute leads to absurd results?

The facts are undisputed that when the trustees of the Maddox Trust moved to Mississippi in 1999, the trustees did not petition a Tennessee court to approve the transfer of situs of the trust. Also undisputed is that the Maddox Trust had not been involved in any court action in Tennessee, nor was the trust a party to any lawsuit in Tennessee prior to the transfer to Mississippi. The question before the trial court on Plaintiff's motion for partial summary judgment, and before this Court on appeal, is whether, under the statute that was in effect in 1999, the trustees were required to seek approval of a Tennessee court for its change of situs to Mississippi. Because there are no genuine issues of material fact relating to this issue, it is a question of law, and an appropriate matter for summary judgment.

■■■ The parties' disagreement centers around the proper interpretation of the statutory procedure for the changing of the situs of an *inter vivos* trust codified at T.C.A. § 35–1–122 (2003). As noted, this statute was repealed in 2004 when the Tennessee Legislature enacted the Tennessee Uniform Trust Code.[6] The statute reads, in its entirety:

Fiduciaries and Trust Estates.

**§ 35–1–122. Venue; county of situs of the trust**

---

**6.** Neither party has identified any Tennessee cases construing the meaning of T.C.A. § 35–1–122, nor has the Tennessee Supreme Court provided an authoritative interpretation of this statute.

(a) When a Tennessee court has jurisdiction of any trust, testamentary or inter vivos, except as otherwise provided by law, the venue for all purposes shall be in the county which is the situs of the trust. The situs of the trust shall remain in the county of the court which first assumed jurisdiction of the trust, unless such court orders a change of situs as provided in subsection (b).

(b) No[ ]twithstanding any other provisions of this chapter, a court having jurisdiction of a testamentary or inter vivos trust, on application of a trustee or of any party in interest, after proper notice to all parties interest, and after an accounting and provision to ensure the proper payment of all taxes owed to the state and any other political subdivision thereof, may direct that the situs of the trust shall be changed to any other place in or out of the state if the court finds the change necessary or desirable for the proper administration of the trust. Upon such change of situs becoming effective by the assumption of jurisdiction by another court, the jurisdiction of the court as to the trust shall cease, and the situs of the trust for all purposes shall be as directed by the court. § 35–1–122. Repealed by 2004 Pub. Acts, c. 537, § 97, eff. July 1, 2004.

The rule of statutory construction to which all others must yield is that the intention of the legislature must prevail. *Mangrum v. Owens,* 917 S.W.2d 244, 246 (Tenn.Ct.App.1995)(citing *Plough, Inc. v. Premier Pneumatics, Inc.,* 660 S.W.2d 495, 498 (Tenn.Ct.App.1983); *City of Humboldt v. Morris,* 579 S.W.2d 860, 863 (Tenn.Ct. App.1978)). "[L]egislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language." *Mangrum v. Owens,* 917 S.W.2d at 246; (quoting *Worrall v. Kroger Co.,* 545 S.W.2d 736, 738 (Tenn.1977)). The Court has a duty to construe a statute so that no part will be inoperative, superfluous, void or insignificant. The Court must give effect to every word, phrase, clause, and sentence of the Act in order to achieve the Legislature's intent, and it must construe a statute so that no section will destroy another. *Id.* (citing *City of Caryville v. Campbell County,* 660 S.W.2d 510, 512 (Tenn.Ct.App. 1983); *Tidwell v. Collins,* 522 S.W.2d 674, 676 (Tenn.1975)). The statute should be construed as a whole, and a particular section should not be read in isolation of the remainder of the statute. *State ex rel. McGhee v. St. John,* 837 S.W.2d 596, 604 (Tenn.1992).

■ Appellant argues that the procedure for changing the situs of a trust outlined in T.C.A. § 35–1–122 did not apply to the Maddox Trust's move to Mississippi. Appellants offer three arguments to support this interpretation. First, they assert that the procedure for changing the situs of a trust in T.C.A. § 35–1–122 was permissive, and because no Tennessee court had "assumed jurisdiction" over the Maddox Trust, the Trustees were not required to obtain court approval of the trust's change of situs to Mississippi. Second, Appellant asserts that the Pennsylvania statutes that were the template for T.C.A. § 35–1–122, did not require court approval of a trust's change of situs, and that Tennessee courts should look to the Pennsylvania courts' interpretation of the Pennsylvania statutes to interpret T.C.A. § 35–1–122. Third, Appellant argues that the trial court's interpretation of T.C.A. § 35–1–122 produces an absurd result, which would have required that even if no

Tennessee court had ever "assumed jurisdiction" over a given trust, the trust could not change its situs, even to another county in Tennessee, without first obtaining the consent of a court in the county of its existing situs. We will address each of these arguments, along with the Appellees response, individually.

Appellant interprets T.C.A. § 35–1–122(b) as permissive, in that it allowed for a petition to the court having jurisdiction for approval of a change of situs of a trust, but did not require court approval. The Appellant's interpretation that the statute was permissive is based on reading sections T.C.A. § 35–1–122(a) and (b) together. The Appellant's analysis of section T.C.A. § 35–1–122(a) states that section specifies that (1) if a trust was subject to the jurisdiction of a Tennessee court, venue of an action involving that trust lay in the county that was the situs of the trust, and (2) after a court has "assumed jurisdiction" over a trust, the trust could not leave that venue without the prior approval of "such court." Therefore, the Appellant concludes, that because the Maddox Trust was not a party to any lawsuit, and no Tennessee court had ever "assumed jurisdiction" over the Maddox Trust, T.C.A. § 35–1–122 did not require prior court approval for the change of situs of the Maddox Trust to Mississippi.

The Appellant claims this interpretation of T.C.A. § 35–1–122 is supported by the distinction that the Legislature drew between courts "having" jurisdiction versus a court "assuming" jurisdiction. The Appellant contends that when the Legislature used the term "has jurisdiction" over a trust in the first sentence of subsection (a) ("when a Tennessee court *has* jurisdiction of any trust ... the venue for all purposes shall be in the county which is the situs of the trust") it was referring generically to all courts having subject matter jurisdic-

tion over trust. Appellant further explains that when the Legislature referred in the second sentence of subsection (a) to a court that has "assumed jurisdiction" over a trust ("situs of the trust shall remain in the county of the court which first *assumed* jurisdiction of the trust"), it was referring to a specific court in which a proceeding concerning a specific trust was pending. The Appellant thus concludes that the scope of the second sentence of subsection (a) ("situs of the trust shall remain in the county of the court which first assumed jurisdiction of the trust, unless such court orders a change of situs as provided in subsection (b)") was limited, and only applied when a specific court had already assumed jurisdiction of a specific trust. The Appellant cites to several Tennessee cases, *King of Clubs, Inc. v. Gibbons*, 9 S.W.3d 796 (Tenn.Ct.App.1999) and *Bishop v. Young*, 780 S.W.2d 746 (Tenn.Ct. App.1989), to illustrate the distinction they have drawn between "having jurisdiction" and "assuming jurisdiction." In conclusion, the Appellants state that the only logical interpretation of T.C.A. § 35–1–122 is that any trust *could* seek court approval for a change of situs under the optional provisions of subsection (b) in any court "having jurisdiction" over the trust. However, the courts approval was not required unless a specific court had already "assumed jurisdiction" over that trust, and then, the change of situs *must* be filed with the court that was already involved in litigation or judicially administering the trust in some way.

In the reply brief, Appellant argues that the rule of statutory construction that a statute should be read as a whole, furthers their argument that subsection (b) cannot be read separately from subsection (a), as the Appellees contend, *supra.* Appellant contends that when reading the subsections together, it is clearly shown that subsection (b) sets forth a procedure for

obtaining judicial approval for changing a trust's situs to another state or county, and nothing more, and does not state when a trust is required to follow that procedure. Appellant asserts that only by reading subsection (a), is it clear when a trustee must follow this procedure for changing situs, and that is only if a Tennessee court had previously "assumed jurisdiction" of a given trust.

Appellees on the other hand assert that the trial court correctly determined that the Maddox Trust was required to obtain approval from a Tennessee court before changing its situs from Mississippi to Tennessee in June 1999. Appellees contend that based on the plain meaning of T.C.A. § 35–1–122, in effect in 1999, a trustee or party in interest of an *inter vivos* trust is affirmatively required to gain approval from a Tennessee court of competent jurisdiction before attempting to transfer situs of the trust. Appellees state that the language of the statute addresses two distinct situations; subsection (a) relates to "venue," and subsection (b) relates to "situs." Appellees assert that subsection (a) refers to those situations in which a trustee or other party in interest petitions the court for a change in venue after the court has already *assumed* jurisdiction of the trust. In contrast, Appellees assert that subsection (b) refers to those situations wherein a court simply *having* jurisdiction over a trust is petitioned by the trustee or other party in interest for a change in the situs of the trust.

Appellees do not disagree with the Appellant's distinction between a court which has "assumed" jurisdiction versus a court "having" jurisdiction over a trust. Appellees cite several cases and Tennessee statutes that support the Appellant's position that a court may "have" jurisdiction over a particular trust prior to a lawsuit or other judicial proceeding being filed in relation to the trust, and that the court does not assume jurisdiction over the trust until such matter is filed. However, the Appellees argue that the Legislature's deliberate choice to change those words between subsection (a) and subsection (b) bears directly upon the proper construction of the statute as it relates to the present dispute. Appellees contend that by looking to the plain language of the statute and giving effect to the ordinary meaning of the words, subsection (b) states that when a court simply *has* jurisdiction over a trust, the trustees are affirmatively required to notify all parties in interest, and obtain court approval from the court *having* jurisdiction before transferring the situs of the trust.

Furthermore, Appellees argue that their interpretation of the statute is supported by the first phrase of subsection (b) "[n]otwithstanding any other provisions of this chapter," which excepts subsection (b) from any interrelation to subsection (a). Thus, the Appellees contend that while subsection (a) refers to venue remaining is the county of the court which first *assumed* jurisdiction, subsection (b) applies to all those situations wherein a court *has* jurisdiction over a trust, not just those situations in which the court has already assumed jurisdiction, and requires court approval for a change of situs for all testamentary and *inter vivos* trusts.

In furtherance of their respective arguments regarding the interpretation of T.C.A. § 35–1–122, both parties are in agreement that the Tennessee statute was patterned after two Pennsylvania statutes, specifically 20 Pa. Cons.Stat. § 722 ("Pa. § 722"), Venue of Trust Estates, and 20 Pa. Cons.Stat. § 725 ("Pa. § 725"), Change of Situs; Order of Court. The statutes were enacted in Pennsylvania as part of the Probate Estates and Fiduciaries Code

of June 30, 1972, P.L. 508, and provide as follows:

20 Pa.C.S.A. Decedents, Estates And Fiduciaries

**§ 722. Venue of trust estates**

When a Pennsylvania court has jurisdiction of any trust, testamentary or inter vivos, except as otherwise provided by law, the venue for all purposes shall be in the county where at the time being is the situs of the trust. The situs of the trust shall remain in the county of the court which first assumed jurisdiction of the trust, unless and until such court shall order a change of situs under the provisions of this chapter.

20 Pa.C.S.A. Decedents, Estates And Fiduciaries

**§ 725. Change of situs; order of court**

A court having jurisdiction of a testamentary or inter vivos trust, on application of a trustee or of any party in interest, after such notice to all parties in interest as it shall direct and aided if necessary by the report of a master, and after such accounting and such provision to insure the proper payment of all taxes to the Commonwealth and any political subdivision thereof as the court shall require, may direct, notwithstanding any of the other provisions of this chapter, 12 that the situs of the trust shall be changed to any other place within or without the Commonwealth if the court shall find the change necessary or desirable for the proper administration of the trust. Upon such change of situs becoming effective by the assumption of jurisdiction by another court, the jurisdiction of the court as to the trust shall cease and thereupon the situs of the trust for all purposes shall be as directed by the court.

Appellant states that Tennessee courts should look to the Pennsylvania courts interpretation of these statutes to interpret T.C.A. § 35–1–122. Citing the Tennessee Supreme Court, Appellant asserts that "[w]hen a statute of another State is adopted in Tennessee, the judicial construction in the State of its origin is imported and written in the statute in so far as this construction does not antagonize our laws and our public policy." *Third National Bank v. King,* 215 Tenn. 528, 387 S.W.2d 800, 802 (1965) (quoting *State ex rel. Williams v. Jones,* 179 Tenn. 206, 164 S.W.2d 823, 825, (1942)). Appellant argues that Pa. § 722 specifies when a petition for change of situs is mandatory, while Pa. § 725 provides the procedure for petitions to change situs. Appellant further states that unless court approval is mandated by Pa. § 722, when a court has already assumed jurisdiction of a trust, the procedure for changing situs of a trust pursuant to Pa. § 725 is voluntary.

Appellant argues that Pennsylvania decisions construing Pa. § 722 and Pa. § 725 illustrate that under Pennsylvania law, the trustees may change the situs of an *inter vivos* trust without first seeking court approval, so long as no court has previously assumed jurisdiction of the trust. Appellants discuss two specific cases that they assert support the proposition that the Pennsylvania statutes did not require court approval to change the situs of an *inter vivos* trust.

First, appellants refer to *Mary J. Drexel Home Petition,* 13 Pa. D. & C.2d 371 (Pa.Orph.1958). Appellants assert that in this case the Pennsylvania court was called upon to decide whether an *inter vivos* trust's change of situs without court approval was valid. The crux of the case was a petition by a charitable institution for authorization to transfer two funds into its general fund under the doctrine of *cy pres. Id.* at 372. The court had to determine whether it was a proper venue for the

action concerning transferring funds held in an *inter vivos* trust. *Id.* at 380–81. The court made its determination based on the predecessor to Pa. § 722, however, the court did not address the issue before us now, that being whether the situs of the *inter vivos* trust could be changed without court approval. *Id.* at 381. The Appellant states in her brief that "[e]vidently, the trustee had not sought the approval of any court before this change of situs; the opinion makes no mention of it, in any event." Appellant's reliance on this case as an indication of whether Pennsylvania law under Pa. § 722 and Pa. § 725, (Pa. § 725 which is never cited or mentioned in the case) requires a mandatory appeal to the court before changing the situs of an *inter vivos* trust is misplaced. The case of *Mary J. Drexel Home Petition* simply does not provide any concrete guidance, beyond assumptions, of what requirements Pennsylvania law places on a trustee who wishes to change of situs of an *inter vivos* trust.

Next, the Appellants assert that the cases adjudicating issues relating to the Carmichael Trust, *Carmichael Trust,* 19 Fiduc.Rep. 484 (Pa.Orph.1969)(Orphans' Court of Montgomery County) and *Carmichael Trust,* 21 Fiduc.Rep. 90 (Pa.Orph.1970)(Orphans' Court of Allegheny County), convey that under the Pennsylvania statutes that are the template for T.C.A. § 35–1–122, an *inter vivos* trust is free to change its situs without court approval unless a court had previously "assumed jurisdiction" over the trust. Again, the crux of these cases was proper venue and reflected the court's interpretation of the predecessor to Pa. § 722, Venue of trust estates. *Carmichael Trust,* 21 Fiduc.Rep. 90 (Pa.Orph.1970). The Orphans' Court of Allegheny County determined that Allegheny County was not the proper venue for the matter because the Orphans' Court of Montgomery County had already

assumed jurisdiction by appointing a guardian and trustee ad litem, and allowing discovery in a petition seeking permission to inspect and obtain copies of instructions given by the settlor to the trustee. *Carmichael Trust,* 19 Fiduc.Rep. 484, 486 (Pa.Orph.1969). Should this Court need to rely on the judicial construction by Pennsylvania courts of Pa. § 722 and Pa. § 725 to provide insight into its interpretation of T.C.A. § 35–1–122, neither *Mary J. Drexel Home Petition* nor the Carmichael Trust cases will be useful. The facts and issues of these cases are not sufficiently close to those before this Court in the present case, and the Appellant's arguments are based too much on assumption.

Appellees contend that T.C.A. § 35–1–122 is clear and unambiguous, thus, this court need not resort to rules of statutory construction such as the comparison of analogous statutes from other states. However, Appellees argue that an analysis of Pa. § 722 and Pa. § 725, and the Pennsylvania decisions interpreting the two statutes, serves only to confirm the trial court's judgment in the present case that T.C.A. § 35–1–122 required an *inter vivos* trust to obtain the approval of a Tennessee court before changing its situs even when no Tennessee court had ever assumed jurisdiction over the trust.

Appellees first note that the separation and titling of the two statutes lends further authority to Appellees' argument that T.C.A. § 35–1–122 is not confined to situations where a Tennessee court has previously supervised or adjudicated matters relating to the trust, but sets out a procedure that must be followed before changing the situs of any *inter vivos* trust. Appellees assert that Pa. § 722, entitled "Venue of trust estates," is meant to function solely as a venue statute, while, Pa. § 725, entitled "Change of situs; order of court," sets out, separate from venue is-

sues, a requirement that a trustee or other interested party must follow in order to transfer the situs of a trust. In their brief, Appellees discuss numerous Pennsylvania cases [7] construing Pa. § 725 and argue that these cases serve to further reinforce their position that court approval must accompany a change of situs of any *inter vivos* trust. The Appellees assert that because case law reveals that parties petition for court approval even when the change of situs is not contested, this is evidence that Pa. § 725 is not permissive, rather mandates that a trustee or party of interest must appeal to the courts for approval of a change in situs. *See Newbold Estate*, 28 Pa. D. & C.2d 92, 95 (1962); *In re Perelle's Trust*, 63 Pa. D. & C.2d 16 (1973). However, in those cases, either the court had already assumed jurisdiction of the trust by approving accountings, *Newbold Estate*, 28 Pa. D. & C.2d at 93, or a trustee had resigned forcing appoint-

ment of a successor trustee, *In re Perelle's Trust*, 63 Pa. D. & C.2d at 17. Again, should this Court need to rely on the judicial construction by Pennsylvania courts of Pa. § 725 to provide insight into its interpretation of T.C.A. § 35–1–122, the cases discussed by Appellees will show only that multiple trustees or parties of interest have sought a change of situs of a trust pursuant to Pa. § 725. There simply has not been a judicial construction in the state of Pennsylvania that would provide this Court with relevant guidance on the question of whether the procedure for changing the situs of a trust defined in T.C.A. § 35–1–122(b) is mandatory, or permissive.

In their final argument opposing the trial court's interpretation of T.C.A. § 35–1–122, the Appellant asserts that interpreting the statute in a manner that requires court approval for the change of

---

**7.** *In re Black's Estate*, 7 Pa. D. & C.4th 228 (1990) (holding that a change of situs requested by settlor and opposed by corporate trustee be dismissed for failure of the settlor to present clear and convincing evidence that change is necessary or desirable where settlor was merely dissatisfied with present trustee); *Casey v. Mercantile–Safe Deposit & Trust Co.*, 10 Pa. D. & C.3d 548 (1978) (ruling that the safeguards built into § 725 pertaining to notice, a potential master's report, an accounting, and the insurance of proper payment of all taxes due the Commonwealth and any political subdivision, would be disregarded completely if the court were to pass upon the record as it now stands, thus, the court will not consider the application for change of situs pursuant to said § 725); *In re Carr's Trust*, 5 Pa. D. & C.3d 359 (1977) (granting a contested petition for change of situs of trust where the party opposing change of situs was the corporate trustee, and all of the other interested parties, including the successor corporate trustee, agreed to the change of situs, and none of the beneficiaries were residents of Pennsylvania; all of the trustees lived in North Carolina, the requested situs for the trust; and two-thirds of the trust assets were North Carolina municipal bonds); *In re Pe-*

*relle's Trust*, 63 Pa. D. & C.2d 16 (1973) (holding that an *inter vivos* trust created by a resident of Pennsylvania and providing that it is to be governed by Pennsylvania law appointed a Pennsylvania institution as trustee, but the trustee resigned and the deed of trust was silent as to the appointment of a successor, and the accountants requested the court to transfer the situs of the trust to California for the reason that most of the beneficiaries reside in California, and no objections are raised thereto, and a guardian and trustee ad litem approves, the court granted transfer of situs pursuant to § 725); *In re Parriott Trust*, 48 Pa. D. & C.2d 597 (1969) (ruling in a contested petition for a change of situs that a change of situs "is not a matter to be taken lightly but one which must be carefully considered by the court and all aspects of such a change carefully reviewed" and, thus, the court refused the petition because the change offered no advantages for proper administration, and, therefore, it was neither necessary nor desirable); *In re Newbold's Estate*, 28 Pa. D. & C.2d 92 (1962) (granting transfer of situs of trust to Connecticut where settlor and beneficiaries resided in Connecticut, and all parties in interest consented and removal was desirable from administrative standpoint).

situs of a trust, even if no Tennessee court had assumed jurisdiction, would produce an absurd result. The Appellant states that a primary rule of statutory construction in Tennessee is that a court "will not apply a particular interpretation to a statutes if the interpretation would yield an absurd result." *State v. Sims*, 45 S.W.3d 1, 11 (Tenn.2001); *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn.2000). The Appellant argues that because subsection (b) of T.C.A. § 35–1–122 refers to changes of situs "in or out of the state," that to interpret that the procedure for changing situs is mandatory, it would require that the court approve a change even to another county in Tennessee. This, the Appellant asserts, would require both a court in the county having original jurisdiction over the trust, as well as a court in the county receiving jurisdiction, to lawfully complete the transfer of situs. Such a result, the Appellant contends, would be absurd.

The Appellant states that if this interpretation were correct, then every time a parent who put $100 in a bank account in trust for a child under the Uniform Gifts to Minors Act ("UTMA"), the parents could not move that account to a bank in another county without first obtaining consent from a court in the county where the initial bank was located, as well as a court in the county where the receiving bank was located would have to assume jurisdiction to perfect the change of situs. Appellant argues that this construction of T.C.A. § 35–1–122 leads to a demonstrably absurd result, and this Court should reject it. Appellees state that the Appellants' "$100 Hypothetical" involving a parent who desires to move a Uniform Transfers to Minors Act bank account to another county, is specifically addressed by the UTMA statute, T.C.A. § 35–7–203(a)–(b), and

would never come under the ambit of T.C.A. § 35–1–122.[8]

As defined, custodianships under the various versions of the Uniform Transfers to Minors Act (and of the predecessor Uniform Gifts to Minors Act) technically are not trust entities. *See* REST 3d TRUSTS § 5. *See also* 76 Am.Jur.2d Trusts §§ 9–16, Distinctions between Trusts and Other Concepts or Relationships (2006). This argument is without merit.

We turn first to the language of the statute. Applying the above-cited principles of statutory construction, we find that T.C.A. § 35–1–122 is somewhat cumbersome, but it is not ambiguous. When the meaning of statutory language is unambiguous, we must interpret it as written, rather than using the tools of construction to give the statute another meaning.

■ T.C.A. § 35–1–122 begins in subsection (a) by describing the class of instruments to which the statute applies: Any trust, testamentary or *inter vivos*, where a Tennessee court has jurisdiction over that trust. Next, the statute dictates that the venue for the identified trust shall be in the county which is the situs of the trust. This provision allows for an exception to venue as may be provided by other law. The last sentence of subsection (a) further dictates that the situs of the trust may not be changed once a court has assumed jurisdiction, unless the court that has assumed jurisdiction orders a change of situs by following the procedure in subsection (b). The last sentence of subsection (a) is necessary to restricts parties in interest to a trust from bringing a matter before a different Tennessee or foreign court in another jurisdiction when a Tennessee court has already assumed jurisdiction of the trust. This situation may arise

---

8. Uniform Transfers to Minors Act § 35–7–203.

when more than one court can claim jurisdiction over a trust.[9]

T.C.A. § 35–1–122 subsection (b) begins with the preposition "notwithstanding" used to separate this section from "any other provisions of this chapter." While the aspects of the two subsections overlap to some degree, the placement of this preposition structures the subsections as two independent subsections, subsection(a) dictating the proper venue for actions brought in relation to a trust; and, subsection (b) defining the proper procedure required for a trustee or any party in interest to change the situs dictated by subsection (a).

Next, subsection (b) defines the Tennessee courts who have the power to change the situs of a trust: any court having jurisdiction of a testamentary or *inter vivos* trust. The statute does not say, or indicate that the court must have assumed jurisdiction of matters relating to the trust, only that the court has jurisdiction over the trust. The statute goes on to define who may apply for a change of situs of a trust: a trustee or any party in interest. Next, the statute dictates conditions that must be met before the court considers the transfer of the situs of a trust: 1) proper notice to all parties of interest, 2) an accounting, 3) verification that proper payment of all taxes owed to the state or other political subdivision of the state. Further, the statute defines what action the court may take: direct that the situs of the trust shall be changed. And defines to where it may be changed: any other place in or out of the state. The statute, next,

places a standard on the court for determining when a change of situs is appropriate: necessary or desirable for the proper administration of the trust. The next sentence of subsection (b) is very important to the determination of the issue at hand in that it dictates when a change of situs becomes effective: *by the assumption of the jurisdiction in another court.* Thus, no change of situs is effective unless a court "in any other place in or out of the state" assumes jurisdiction over the trust. The statute concludes by stating that the change of situs, once assumed by the jurisdiction of the receiving court, will remain there for all purposes, and shall be directed by the receiving court.

As reflected in the language of T.C.A. § 35–1–122, the successful transfer of situs of an testamentary or *inter vivos* trust from the state of Tennessee, up until the repeal of T.C.A. § 35–1–122 in 2004, required two acts. First, the act of an order by the Tennessee court having jurisdiction over the trust, and, second, the act of a court in the receiving jurisdiction assuming jurisdiction over the court. It would be incongruous to interpret the statute to not require court approval for transfer when the statute explicitly requires assumption of jurisdiction of the trust by another court to complete the transfer. Thus, the trial court did not err in finding that T.C.A. § 35–1–122 required the trustees of the Maddox Trust to obtain the approval of a Tennessee court before changing its situs, and, due to the absence of compliance with T.C.A. § 35–1–122, that the transfer of the situs of the Tennessee

9. Generally, factors that a court may consider when determining the situs of a trust include provisions of the trust instrument, domicile of the settlor, the residences of the trustee, the residences, if any, of the beneficiaries, the location of the real property held by the trust, and the location where the business of the trust is to be carried on. Additionally, the personal jurisdiction acquired over the parties interested in the trust through personal service may be considered. 90 CJS *Trusts* §§ 88, 221 (2006). *See also* Bogert, The Law of Trust and Trustees § 295 (rev.2d ed.1992); 54 Am.Jur. Trusts 301; Ingen, G. Van, *Jurisdiction of suit involving trust as affected by location of res, residence of parties to trust, service, and appearance,* 15 A.L.R.2d 610.

Trust to Mississippi was invalid and ineffective. As the facts related to this issue are undisputed, and the determinative factor is the applicability of T.C.A. § 35-1-122, summary judgment was appropriately granted. The legal situs of the Maddox Trust remains in Tennessee, and Tennessee has retained jurisdiction over the trust.

(2) Whether the trial court erred in holding that because the *inter vivos* trust had failed to obtain prior judicial approval of it change of situs under former T.C.A. § 35-1-122, its change of situs was totally ineffective and all of its actions from that point forward were void, even to the point of deeming the trust to have continued its existence in Davidson County without interruption form 1999 to the present?

Because we have determined that the transfer of the Maddox Trust from Tennessee to Mississippi in 1999 was invalid and ineffective, the situs of the Maddox Trust has remained in Davidson County. Furthermore, the State of Tennessee has retained jurisdiction over the Maddox Trust, without interruption, since October 19, 1968. However, the trial court's interpretation of the statute does not void all actions taken by the trustees after June, 1999.

■ The sole factor relied upon by the trial court in deciding that all of the trustees' actions from the time of the ineffective transfer of situs forward were void, was the fact that the transfer of the situs of the Maddox Trust from Tennessee to Mississippi, as determined in the first issue before this Court, *supra*, was invalid. We find nothing as a matter of law that would sustain the holding that the ineffective transfer of situs results in voiding all the actions of the trustee of the Maddox Trust following the attempt to transfer the situs, and we find that this determination on a motion for partial summary judgment

was inappropriate. Accordingly, we reverse the trial court's grant of summary judgment to the Appellees on the issue that all of actions of the trustees of the Maddox Trust following the ineffective attempt to transfer the situs of the Trust to Mississippi in June, 1999, forward were void. We remand this issue for the determination of whether acts of the trustees after June, 1999, were in good faith, in accordance with intent of the settlor, the terms and purposes of the trust, and the interests of the beneficiaries, and in accordance with the laws of Tennessee governing the duty of the trustee of an *inter vivos* trust.

(3) Whether, in view of the trial court's holding that the *inter vivos* trust had continued in existence, the trial court nevertheless lacked subject matter jurisdiction under the Tennessee Uniform Trust Code that became law on July 1, 2004 (specifically, T.C.A. § 35-15-204(a)), because the trust's "principal place of administration" is not in Davidson County?

The Appellant contends that under the Tennessee Uniform Trust Code the Davidson County Probate Court does not have subject matter jurisdiction over the Appellees claims because the principal place of administration of the Maddox Trust and the Maddox Corporation are in Mississippi. The Appellant specifically refers to T.C.A. § 35-15-204(a), which reads:

Except as otherwise provided in subsection (b), venue for a judicial proceeding involving a trust is in the county of this state in which the trust's principal place of administration is or will be located and, if the trust is created by will and the estate is not yet closed, in the county in which the decedent's estate is being administered.

T.C.A. § 35-15-204(a) (2005). However, as determined by our finding in issue number one, *supra*, that the transfer of the

Maddox Trust from Tennessee to Mississippi in 1999 was invalid and ineffective, the State of Tennessee has retained jurisdiction over the Maddox Trust, without interruption, since October 19, 1968. While the Maddox Corporation may have its principal place of administration in Mississippi, that Mississippi nonprofit corporation is but an asset of the Maddox Trust, and the situs of the Maddox Trust is in Davidson County, Tennessee.

■ Additionally, the Appellant need only look to the official comment of T.C.A. § 35–15–204 to find further support for the State of Tennessee's jurisdiction over the Maddox Trust. The comment reads:

> For jurisdictions enacting this section, general rules governing venue continue to apply in cases not covered by this section. This includes most proceedings where jurisdiction over a trust, trust property, or parties to a trust is based on a factor other than the trust's principal place of administration. The general rules governing venue also apply when the principal place of administration of a trust is in another locale, but jurisdiction is proper in the enacting state.

T.C.A. § 35–15–204 cmt. The State of Tennessee's jurisdiction over the Maddox Trust, and over the assets of the Maddox Trust, including those held by the Maddox Corporation, is based on a "factor other than the trust's principal place of administration," namely the fact that Tennessee never lost jurisdiction due to the trustees' failure to comply with T.C.A. § 35–1–122.

(4) Whether the trial court's violation of the Davidson County Local Rules of Practice by hearing Plaintiff's Motion for Partial Summary Judgment on less than twenty-four hours notice and almost two weeks before the deadline for Defendants' written response amounted to an abuse of discretion?

The Appellees' motion for partial summary judgement was held less that thirty-seven (37) days after the Appellees filing of that motion in violation of the Davidson County Local Rule 26.03(b), upon the trial court's waiver of Rule 26.03(b). The Appellant asserts that the trial court's waiver of Davidson County Local Rule 26.03(b) was an abuse of discretion that prejudiced the Appellant, and as a result, that the trial court's grant of summary judgment should be reversed.

■ The facts pertinent to this issue are stated, *supra*, and repeated in the trial court's Order of August 30, 2005. We include the text of the trial court's August 30, 2005 Order, to reveal the trial court's sound reasoning in the matter. The Order reads, in pertinent part,:

> After consideration of the pleadings filed by the Plaintiff, the arguments of all counsel, and the entire record in this cause, and for the reasons stated at the conclusion of the hearing, the Court makes the following findings:
>
> a) that on July 29, 2005, Plaintiff served upon the Defendants, via hand delivery, its motion seeking partial summary judgment. Plaintiff's motion was filed on Monday, August 1, 2005;
>
> b) that Monday, August 29, 2005 was the thirty first day following the service of said motion. Wednesday, September 7, 2005 is the thirty seventh day following the filing of said motion;
>
> c) that when Plaintiff filed its motion, it set the motion to be heard on Friday, September 9, 2005. At the request of counsel for Ms. Costa, Plaintiff re-set the hearing on the motion for Friday, September 16, 2005;
>
> d) that on Friday, August 26, 2005, a "Motion for Summary Judgment" was filed by the State of Mississippi

in that certain lawsuit pending in De-Soto County, Mississippi entitled: *State of Mississippi v. Maddox Foundation, Robin Costa and Tommye Maddox Working* (the "Mississippi Litigation"). That motion requests entry of a final judgment recognizing and declaring, among other things, that: (a) Tenn.Code Ann. § 35–1–122 does not apply in this case, and that the 1999 change of situs of the Maddox Foundation was valid, proper and effective to establish it as a Mississippi trust; and (b) that Tenn.Code Ann. § 35–1–122 does not authorize or establish any legal basis for Ms. Working or anyone else to claim title to the Maddox Foundation's assets, or for any Tennessee court to assume jurisdiction over matters pertaining to the Maddox Foundation which are within the exclusive jurisdiction of the courts of Mississippi;

e) that as part of the State of Mississippi's Motion for Summary Judgment, the Mississippi Attorney General also filed the Affidavit of Robin G. Costa, which was signed by Ms. Costa on August 24, 2005;

f) that the Maddox Foundation, on August 26, 2005, filed a Joinder, specifically joining in State of Mississippi's request for entry of summary judgment and final judgment with respect to those issues identified above. Notwithstanding the fact that the Mississippi Litigation is pending in DeSoto County, Mississippi, the "Motion for Summary Judgment" was set for a hearing in Montgomery County, Mississippi on Wednesday, September 7, 2005;

g) that Rule 56.04 of the Tennessee Rules of Civil Procedure provides that a motion for summary judgment may not be set for a hearing in less than thirty days after service of the notice of the hearing. August 30, 2005 is more than thirty days after the service of the notice of the hearing that is contained in the Plaintiff's Motion for Partial Summary Judgment;

h) that Davidson County Local Rule 26.03 provides that motions for summary judgment shall be set for a hearing not less than thirty seven days after the motion is filed. That day, with respect to the Plaintiff's Motion for Partial Summary Judgment is Wednesday, September 7, 2005. Local Rule 1.03 however, provides that in the interest of justice, the applicability of the Local Rules can be suspended. Consequently, this Court has the inherent power, in its sound discretion, to accelerate the hearing on Plaintiff's Motion for Partial Summary Judgment in order to ensure that this Court's jurisdiction is not impaired and that its decrees are accorded full faith and credit;

I) that the Defendants, the Maddox Foundation and Ms. Costa, will not be unfairly prejudiced if the Court should grant to the Plaintiff the relief requested in the Emergency Motion. The Maddox Foundation and Ms. Costa have already had more than the minimum notice time required by the Tennessee Rules of Civil Procedure. The Maddox Foundation and Ms. Costa have already twice briefed the legal issues presented in Plaintiff's Motion for Partial Summary Judgment when they argued in their response to the Plaintiff's Motion for Instructions (in September 2004) and in their Motion to Dismiss (in October 2004) that T.C.A. § 35–1–122 had no applicability to the change of situs of the Maddox Foundation;

j) that if the relief sought in this emergency motion is not granted, this Court's jurisdiction will be impaired and the charitable beneficiaries of the Maddox Foundation will be deprived of the opportunity to have the applicability of a Tennessee statute to a Tennessee trust determined by the Tennessee Probate Court that has jurisdiction over the Maddox's decedent estates, their revocable trusts and the charitable trust that is the ultimate legatee of the Maddox's estate plan.

Based on the above findings, this Court ORDERS, ADJUDGES AND DECREES that the interests of justice require that this Court suspend Davidson County Local Rule 26.03 in order that a hearing on the Plaintiff's Motion for Partial Summary Judgment be heard immediately, and in order to ensure that this Court's jurisdiction is not impaired and that its decrees are accorded full faith and credit.

In *Killinger v. Perry,* 620 S.W.2d 525 (Tenn.Ct.App.1981), the court considered a trial court's ability to waive or abolish a local rule. The court stated:

> The Trial Court has authority to make its own rules and accordingly may waive or abolish them if it chooses. This Court will not reverse a Trial Judge for waiving a local rule absent the clearest showing of an abuse of discretion and that such waiver was the clear cause of a miscarriage of justice.

*Killinger,* 620 S.W.2d at 525. We find no abuse of discretion by the trial court, and emphasize that Local Rule of Practice 1.03 specifically allows for deviations in "exceptional cases where justice so requires." Local Rule § 1.03, Davidson County Courts of Record. As there is no showing of an abuse of discretion or miscarriage of justice in the trial court's waiver of its local rule, we find no error in the court's ruling.

For the foregoing reasons, we affirm the order of the trial court granting summary judgment to the Appellees to the extent that T.C.A. § 35–1–122 required court approval before transferring the situs of the trust, we reverse the grant of summary judgment to the extent that it voids all of the actions of the trustees of the Maddox Trust following the attempt to transfer the situs of the trust, and remand this case for such further proceedings as may be necessary. Costs of this appeal are assessed one-half to the Appellant, Robin G. Costa, and her surety, and one-half to Appellee, Tommye Maddox Working.